David R. Wright (Utah State Bar No. 5164)
  *dwrighte@mabr.com*
Kirk R. Harris (Utah State Bar No. 10221)
  *kharris@mabr.com*
Jared J. Braithwaite (Utah State Bar No. 12455)
  *jbraithwaite@mabr.com*
Adam B. Beckstrom (Utah State Bar No. 14127)
  *abeckstrom@mabr.com*
MASCHOFF BRENNAN
201 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone:     (801) 297-1850
Facsimile:     (435) 252-1361

Attorneys for Plaintiff
DOMO, INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| **DOMO, INC.,**<br>a Utah corporation,<br><br>     Plaintiff,<br> v.<br><br>**GROW, INC.,** a Delaware corporation, and<br>**ROB NELSON,** an individual,<br><br>     Defendants. | **Complaint**<br><br>Civil Action No. 2:17-cv-00812<br><br>Magistrate Judge Evelyn J. Furse<br><br><br>(Jury Demanded) |

Plaintiff Domo, Inc. ("Domo") hereby complains against defendants Grow, Inc. ("Grow") and Rob Nelson ("Nelson") (Grow and Nelson collectively, "Defendants") for the causes of action alleged as follows:

**The Parties**

1.      Domo is a corporation duly organized and existing under the laws of the State of Utah, with its principal place of business located at 772 East Utah Valley Drive, American Fork, UT 84003.

2.      On information and belief, Grow is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1401 Research Way, #2200, Orem, Utah 84097.

3.      On information and belief, Nelson, a resident of the state of Utah, is the founder and CEO of Grow, Inc.

**Jurisdiction and Venue**

4.      This is a civil action for fraud arising under Utah common law, trade dress infringement arising under the Lanham Act of 1946, as amended, 15 U.S.C. § 1052, *et seq.*, tortious interference arising under Utah common law, unfair competition arising under Utah Code Ann. § 13-5a-103, and deceptive trade practices arising under Utah Code Ann. § 13-11a-4(2)(a).

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over the related state law claims under 28 U.S.C. §1367(a) because they arise out of the same occurrences alleged in the Complaint so as to form a part of the same case or controversy within the meaning of Article III of the United States Constitution.

6.      This Court has personal jurisdiction over Grow because Grow's headquarters are in Provo, UT and, as such, it is a resident of this State.

7.      This Court has personal jurisdiction over Nelson because he is a resident of this State.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1).

**Background**

9.      Domo is a well-known company and a pioneer in the business intelligence software industry. Domo markets and sells its business management platform (the "Domo Platform") throughout the United States, and in many countries around the world.

10.     The Domo Platform was the first business intelligence software of its kind.

**Nelson's Fraudulent Misrepresentation**

11.     On September 12, 2013, a member of Domo's sales force reached out to Nelson, who was then Chief Technology Officer at AFS (a transportation cost management company based in Shreveport, Louisiana), via email with an invitation to learn more about Domo's innovations related to business data and reporting.

12.     This email was one of many that Domo's sales force had sent to Nelson regarding this same topic without receiving a response.

13.     However, on September 12, 2013, Nelson responded to Domo and asked to receive a link to a demonstration of the Domo Platform that he could check out at a time that was convenient for him.

14.     Because Domo's demonstrations of the Domo Platform often include confidential information, Domo's practice is to provide demonstrations only to individuals that it believes are genuinely interested in becoming customers.

15.     In response to Nelson's request, and based on his expressed interest in evaluating the Domo Platform as a potential customer, on October 11, 2013, he was given a 45 minute live demonstration of the Domo Platform.

16.     Upon completion of the live demonstration, Domo sent Nelson links to one-time view videos further demonstrating the Domo Platform so that he could show them to his team at AFS.

17.     That same day, Nelson sent an email to Domo indicating that it was a great demonstration, that he loved the product, and that he was excited to share it. Nelson also asked whether Domo had any pdfs to go along with the demonstration.

18.     In response to this solicitation, on October 14, 2013, Domo sent Nelson a slide show with screen shots of the Domo Platform.

19.     During these communications with Domo, Nelson represented that AFS was potentially interested in purchasing the Domo Platform and becoming a Domo client.

20.     Nelson further informed Domo that he was in charge of software acquisition at AFS, but that he would need to bring the executive team on board. Nelson indicated that he would meet with the executives and other board members at AFS to get budget approval for the Domo Platform.

21.     On information and belief, AFS was not interested in purchasing the Domo Platform or becoming a Domo client. On information and belief, Nelson knew AFS was not interested in purchasing the Domo Platform or becoming a Domo client, but knowingly conveyed the opposite message to Domo.

22.     On information and belief, Nelson misrepresented AFS's interest in the Domo Platform to induce Domo to provide him with a demonstration, and accompanying screen shots, of the Domo Platform, which he then used as a template to develop competing business intelligence software.

23.     Nelson did not tell Domo that he was planning to launch a competing product at the same time that he twice affirmatively requested presentation materials containing information related to the Domo Platform.

24.     On information and belief, Nelson was aware of this omission, which he used to induce Domo to provide him with information about the Domo Platform.

25.     Domo had no reason to believe that AFS was not actually interested in becoming a Domo client or that Nelson intended to use the information that he obtained from Domo to develop competing business intelligence software. As such, Domo acted reasonably in providing a demonstration, and other information related to the Domo Platform, to Nelson.

26.     But for his misrepresentations and omissions, Domo would not have provided Nelson with a demonstration of the Domo Platform, or provided Nelson with screenshots and additional links to videos that provided further demonstrations of the Domo Platform.

27.     In late October/early November 2013, Domo attempted to contact Nelson at AFS to follow up on AFS's interest in the Domo Platform.  At this time, Domo was informed that Nelson had left AFS.

28.     In January 2014, Nelson founded Grow, a company that directly competes with Domo in the business intelligence software industry. Unsurprisingly, Grow's business intelligence software bears an uncanny resemblance to the Domo Platform.

5

29.     On information and belief, as the founder and CEO of Grow, Nelson used the ill-gotten information provided to him by Domo to assist him in developing Grow's business management software.

30.     Grow's marketing and sales of its business management software has resulted in competitive injury and damage to Domo in the form of lost customers and lost business opportunities.

**Domo's Trade Dress**

31.     The Domo Platform has continuously featured common design elements.

32.     These continuously used design features comprise the following elements ("Domo Trade Dress"):

   a. a dashboard made up of numerous individual tiles or "cards;"

   b. each card on the dashboard is rectangular in shape;

   c. each card features a white background with colored tables and graphs or a number representing a key performance indicator (or summary number);

   d. individual cards with charts feature a key performance indicator in the top left corner of the card in font that is much larger than the surrounding text;

   e. individual cards use green arrows to indicate an increase in the summary number and red arrows to indicate a decrease in the summary number;

   f. individual cards utilize bar graphs, area charts, and maps to represent important business data;

   g. individual cards feature a title in the top left corner of the card;

h.      individual cards can be reduced and enlarged in size based on user

preference;

i.      individual cards can be interchanged to any location on the dashboard;

j.      the dashboard features a circular picture of the user in the upper right hand

corner;

k.      the dashboard features numerous buttons in the top right corner, including a

circular button with a plus sign in the middle.

33.     Each of the features that make up the Domo Trade Dress constitute a design choice not driven solely by function.

34.     A representative dashboard featuring many elements of the Domo Trade Dress can be seen in Exhibit A, filed concurrently herewith.

35.     As a result of Domo's continuous use of the Domo Trade Dress, including advertisement, marketing, and sales utilizing the Domo Trade Dress, the Domo Trade Dress has become an asset of substantial value to Domo as a distinctive indication of the origin and quality of the Domo Platform.

36.     Domo uses the Domo Trade Dress in interstate commerce in connection with the sale and advertising of its products nationwide and throughout the world.

37.     By using the Domo Trade Dress, Domo has developed significant and valuable goodwill in this mark.

**Grow's Infringement of Domo's Trade Dress**

38.     Grow is profiting off of Domo's creativity and success by selling business management software under the Grow name (the "Infringing Platform").

7

39. Grow copied the distinctive Domo Trade Dress for use in the marketing and sales of its Infringing Platform. An exemplary image of the Infringing Platform can be seen in Exhibit B, filed concurrently herewith.

40. Grow has incorporated each and every previously identified element of the Domo Trade Dress into its Infringing Platform.

41. Grow's incorporation of the Domo Trade Dress into its Infringing Platform is likely to cause confusion, mistake, or deception, as those encountering Grow's Infringing Platform will mistakenly believe that Grow's Infringing Platform is sponsored, endorsed, approved by, or connected with Domo, when in fact it is not.

42. The Grow Platform does not meet the high standards of quality and performance that customers have come to expect from the Domo Platform.

43. Grow sells its Infringing Platform at a price point that is significantly lower than the price that Domo charges for the Domo Platform. By selling the Infringing Platform, which mimics the Domo Platform, at a reduced price, Grow is diverting customers away from Domo, eroding Domo's price point for the Domo Platform, and tarnishing Domo's reputation as a provider of high quality business management software.

44. Grow's previously enumerated actions have caused, and continue to cause, Domo extensive financial damage and damage to the value and goodwill of the Domo Trade Dress.

45. In addition to the significant financial damage that Domo has, and is, suffering as a result of Grow's actions, Domo is suffering immediate and irreparable harm.

46. By way of letter dated December 19, 2014, Domo provided notice to Grow of the wrongful conduct described herein and of the resultant harm being suffered by Domo. Domo's

letter included a demand that Grow cease and desist its wrongful conduct. Grow refused to cease and desist.

### FIRST CLAIM FOR RELIEF
### Nelson's Fraud, Utah Common Law

47.     By this reference Domo realleges and incorporates the foregoing paragraphs as though fully set forth herein.

48.     Nelson represented to Domo that AFS was interested in the Domo Platform and potentially in becoming a client of Domo.

49.     On information and belief, AFS was not interested in purchasing the Domo Platform or becoming a Domo client. As the Chief Technology Officer of AFS, Nelson was uniquely aware that his representations regarding AFS's interest in the Domo Platform were false.

50.     While soliciting information from Domo regarding the Domo Platform, Nelson omitted the fact that he was planning to launch a competing product.

51.     On information and belief, Nelson was uniquely aware of this omission, which was used to induce Domo to provide Nelson with information about the Domo Platform.

52.     Domo had no reason to believe that AFS was not actually interested in becoming a Domo client or that Nelson intended to use the information that he obtained from Domo to develop the Infringing Platform. As such, Domo acted reasonably in providing a demonstration, and other information related to the Domo Platform, to Nelson.

53.     But for Nelson's misrepresentations and omissions, Domo would not have provided him with a demonstration of the Domo Platform, or screenshots and video links that provided additional demonstrations of the Domo Platform.

54. On information and belief, as the founder and CEO of Grow, Nelson used the information provided to him by Domo to assist him in developing Grow's Infringing Platform.

55. Grow's marketing and sales of the Infringing Platform have resulted in competitive injury and damage to Domo in the form of lost customers and lost business opportunities, as well as price erosion and diminution in the value of the Domo Trade Dress.

56. Domo is entitled to damages in an amount to be established at trial.

57. Domo has no adequate remedy at law for the irreparable injury it has suffered and will continue to suffer unless Grow is both preliminarily and permanently enjoined from its continued use of the ill-gotten information in the Infringing Platform.

**SECOND CLAIM FOR RELIEF**
**Grow's Trade Dress Infringement, Lanham Act**

58. By this reference Domo realleges and incorporates the foregoing paragraphs as though fully set forth herein.

59. Grow's use of the Domo Trade Dress in the Infringing Platform is deceptive and likely to cause mistake and confusion regarding whether Grow's goods and services originate from Domo, or are sponsored, or approved of, by Domo.

60. By its aforementioned acts, Grow has infringed Domo's federal trademark rights in the Domo Trade Dress in violation of section 32 of the Lanham Act, 15 U.S.C § 1125(a).

61. Grow's acts have been willful and in conscious disregard of Domo's rights in the Domo Trade Dress.

62. Grow's previously enumerated actions have caused, and continue to cause, Domo extensive financial damage and damage to the value and goodwill of the Domo Trade Dress.

63.     Domo has suffered and will continue to suffer irreparable injury for which Domo has no adequate remedy at law.

64.     Domo is entitled to damages in an amount to be established at trial.

65.     Domo has no adequate remedy at law for the irreparable injury it has suffered and will continue to suffer unless Grow is both preliminarily and permanently enjoined from its infringing and improper conduct.

**THIRD CLAIM FOR RELIEF**
**Defendants' Tortious Interference, Utah Common Law**

66.     By this reference Domo realleges and incorporates the foregoing paragraphs as though fully set forth herein.

67.     Defendants have intentionally, and by improper means, interfered with Domo's existing and potential economic relations.

68.     By way of example, and as set forth hereinabove, Nelson fraudulently obtained information from Domo that he, as founder and CEO of Grow, used to develop Grow's Infringing Platform, which infringes upon the Domo Trade Dress.

69.     Defendants have flooded the market in which Domo and Grow compete with the Infringing Platform. Defendants' actions have resulted in competitive injury and damage to Domo in the form of lost customers and lost business opportunities, as well as price erosion and diminution in the value

70.     Domo has suffered, and will continue to suffer, irreparable harm unless Defendants are enjoined from tortuously interfering with Domo's business and economic relations.

11

## FOURTH CLAIM FOR RELIEF
### Defendants' Unfair Competition, Utah State Law

71.     By this reference Domo realleges and incorporates the foregoing paragraphs as though fully set forth herein.

72.     Defendants' conduct is in violation of Utah Code Ann. § 13-5a-101 *et seq*.

73.     Defendants have violated Utah Code Ann. § 13-5a-102(4)(a)(ii)(B) by using the fraudulently obtained information to develop the Infringing Platform, which infringes the Domo Trade Dress.

74.     Defendants' actions have led to a material diminution in value of the Domo Trade Dress.

75.     Domo has been injured by Defendants' use of the fraudulently obtained information and infringement of the Domo Trade Dress.

76.     Pursuant to Utah Code Ann. § 13-5a-103, Domo is entitled to recover damages, costs, attorneys' fees, and punitive damages from Defendants for their unfair competition.

## FIFTH CLAIM FOR RELIEF
### Grow's Deceptive Trade Practices, Utah State Law

77.     By this reference Domo realleges and incorporates the foregoing paragraphs as though fully set forth herein.

78.     Grow, by its actions as set forth hereinabove, has caused a likelihood of confusion or of misunderstanding as to the source of its products and services and has thereby engaged in a deceptive trade practice, pursuant to Utah Code Ann. § 13-11a-3(1)(b).

79.     Grow's conduct as set forth hereinabove gives rise to a cause of action for deceptive trade practices and related wrongs under the statutory and common law of the State of Utah, including at least Utah Code Ann. § 13-11a-4(2)(a).

80.     On information and belief, Grow has engaged in deceptive trade practices against Domo in willful and deliberate disregard of Domo's rights and those of the consuming public.

81.     By reason of Grow's acts of deception, Domo has suffered damage and irreparable harm.

82.     Accordingly, Domo is entitled to injunctive and monetary relief against Grow, pursuant to at least Utah Code Ann. § 13-11a-4(2)(a) and (b).

## Prayer for Relief

WHEREFORE, Domo prays for entry of a final order and judgment that:

A.     Nelson be adjudged to have committed fraud with respect to the representations and omissions that he made to Domo;

B.     Grow be adjudged to have infringed Domo's rights in the Domo Trade Dress;

C.     Defendants be adjudged to have tortiously interfered with Domo's economic relations;

D.     Defendants be adjudged to have committed acts of unfair competition;

E.     Defendants be adjudged to have engaged in deceptive trade practices;

F.     Domo be granted preliminary and permanent injunctive relief pursuant to Section 34(a) of the Lanham Act, 15 U.S.C. § 1116(a), and Utah Code Ann. § 13-11a-4(2)(a), enjoining Grow, its officers, agents, servants, employees, and all those persons in active concert or

participation with any of them from further acts of infringement of Domo's rights in the Domo Trade Dress;

G.      Domo be granted permanent injunctive relief enjoining Grow, its officers, agents, servants, employees, and all those persons in active concert or participation with any of them, from engaging in deceptive trade practices, pursuant to at least Section 34(a) of the Lanham Act, 15 U.S.C. § 1116(a), and Utah Code Ann. § 13-11a-4(2)(a);

H.      Domo be awarded damages sufficient to compensate it for all losses which naturally and proximately resulted from Nelson's fraud;

I.      Domo be awarded damages and costs and Grow's profits under 15 U.S.C. § 1117 for Grow's infringement of the Domo Trade Dress;

J.      Domo be awarded damages sufficient to compensate it for all losses with naturally and proximately resulted from Defendants' tortious interference;

K.      Domo be awarded damages, costs, attorneys' fees, and punitive damages from Defendants for their acts of unfair competition, pursuant to Utah Code Ann. § 13-5a-103;

L.      Domo be awarded damages and Grow's profits, in an amount to be proven at trial, pursuant to applicable state statutory and common law, including at least the greater of Domo's actual damages and $2,000, pursuant to Utah Code Ann. § 13-11a-4(2)(b);

M.      As part of final judgment, the Court declare that this is an exceptional case under 15 U.S.C. § 1117, and award Domo its attorneys' fees;

N.      Domo be awarded costs and attorneys' fees under Utah Code Ann. § 13-11a-4(2)(c); and

O.      Domo be granted such other and further relief as the Court may deem just and proper under the circumstances.

**Demand for Jury Trial**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Domo demands trial by jury on all claims and issues so triable.

Dated: July 14, 2017                               MASCHOFF BRENNAN

                                        By:   */s/ David R. Wright*
                                              David R. Wright
                                              Kirk R. Harris
                                              Jared J. Braithwaite
                                              Adam B. Beckstrom

                                              Attorneys for Plaintiff
                                              DOMO, INC.

15

# EXHIBIT A



# EXHIBIT B

